IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| GARY THOMPSON AND JACOB THOMPSON, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CASE NO. 2:09-CV-00010 ECF |
| FLINTROCK FEEDERS, LTD., NEXUM MANAGEMENT, LLC, AND LINDY "BUD" BOSTIC, | § § § § § | |
| Defendants. | § | |

## JOINT PRETRIAL ORDER

Plaintiffs/Counter Defendants, Gary Thompson and Jacob Thompson (the "Thompsons" or simply "Plaintiffs"), and Defendants/Counter Plaintiffs, Flintrock Feeders, Ltd, Nexum Management, LLC, and Bud Bostic (collectively "Flintrock," or individually by name or simply "Defendants"), submit this Joint Pre-Trial Order in accordance with the Court's Pretrial Notice and Order dated October 23, 2009.

### A.

#### PENDING MOTIONS

1. There are no pending motions, however, Flintrock anticipates challenging Plaintiffs' purported expert, Michael Henderson, as Mr. Henderson has failed to provide Defendants with a detailed report in accordance with Federal Rule of Civil Procedure 26(a)(2). In addition, it is believed, yet not yet known (as after requests, no CV has been provided to Flintrock), that Mr. Henderson is not qualified to testify as certain matters on which he was designated. Flintrock found out on December 9, 2009, that Plaintiffs provided Mr. Henderson with documents. Plaintiffs failed to supplement their discovery responses identifying what documents Mr. Henderson received.

2. Plaintiffs have now supplemented their discovery responses to notify Defendants that Mr. Henderson received only the documents produced by Defendants themselves in this lawsuit. Plaintiffs also anticipate challenging Defendants' purported experts, Douglas Burr, Tom Latta, DVM, as Plaintiffs have not received any reports from these experts nor have Plaintiffs received curriculum vitae for any of these named experts.

# B.

## CLAIMS AND DEFENSES

### 1. Summary of Claims and Defenses of Plaintiffs and Counter-Defendants

Plaintiffs entered into a series of contracts, some signed, some unsigned with Defendants in the late summer and fall of 2008 and Plaintiffs sent many, many head of cattle to Defendants' feedyard in the fall of 2008. These contracts are entitled "Retained Equity Contract For Purchase of Cattle" (hereinafter "Retained Equity Contracts"). Under the terms of the Retained Equity Contracts Plaintiffs sold the cattle to Defendants but received only 75% of the purchase price and retained a 25% interest in the cattle. Plaintiffs invested over $500,000.00 into the Retained Equity Contracts and the cattle represented there by with Flintrock. The Thompsons sent approximately 4,500 head of cattle to Flintrock.

In connection with the Retained Equity Contracts, the Thompsons were offered the ability to take hedge positions in the cattle markets on the Chicago Mercantile Exchange. This ability to "hedge" was part of the incentive for entering into the Retained Equity Contracts. This was to be a way for the Thompsons to reduce their risk of loss on the equity they held in the cattle. The Thompsons did indeed take "hedge" positions through the account offered by defendants. The Defendants, through Nexum Management, LLC, had a brokerage account which was backed by a line of credit with a bank. The Plaintiffs were allowed to "hedge" through Defendants' brokerage account; and sub-accounts were maintained for Plaintiffs as well as other clients of Flintrock. Defendants were also hedging cattle through their account. The account was not held just for clients of Flintrock. The Plaintiffs were charged approximately $72,000, or $26 per head, for the ability to hedge, which served as margin money for the placing of the hedge contracts with the broker.

The Thompsons took direction from individuals working for or with the Defendants with regard to hedging decisions. The Thompsons have never had their own hedging account. Defendants represented themselves to be a secure and profitable business. Defendants did not reveal that the Thompsons' hedge positions were encumbered to any bank or otherwise.

In late October of 2008 and early November the Thompsons held "hedges" that were to be profitable for them. In November 2008, the Defendants' bank caused these hedge positions to be forcibly liquidated, inasmuch as they refused to further fund the line of credit securing the Defendants' hedge account. In addition to liquidating all of Flintrock's own positions, all of the Thompsons' positions were taken and liquidated by the bank. Flintrock's own hedging caused the account not to be secured as Flintrock's hedging positions were over and above the number of cattle securing the account.

Subsequent to the forced sale of the Thompsons' hedge positions, cattle prices continued to drop and the Thompson's would-be insurance through hedging was sorely needed. Had their hedge positions not been liquidated by Defendants' bank in early November, as of December 5, 2008, the date picked by the Plaintiffs prior to the filing of the lawsuit to set the prices for purposes of filing the complaint, the prices on the cattle futures contracts and hedge positions would have resulted in $375,238.00 for the Thompsons.

Instead of having this needed back-up as promised by Defendants, Defendants through their own over-hedging caused the Thompsons' loss. Further compounding the loss was the Defendants'

negligent care of the cattle causing the Thompsons further damages through the poor performance of the cattle under the care of the Defendants. There were high rates of death. There was inadequate staffing at the Defendant feed yard due to the feedyard not be adequately funded. All this resulted in lower sales and higher costs.

As a result of all these transactions and Defendants' actions and inactions in connection there with, Plaintiffs have suffered damages. The Thompsons' claims focus on breach of contract by the Defendants, their breach of the duty to fulfill that contract in good faith, and securities violations.

Earlier in this lawsuit the Defendants filed a motion for summary judgment seeking to have Bud Bostic dismissed as not personally liable and this court denied that motion. Defendants again assert his lack of liability and again assert the reasons given in their earlier motion by reference to it. Bud Bostic was the "boss" of Flintrock. As stated in Plaintiffs response to the motion for summary judgment, Bud Bostic is personally liable; the entity he is a principal of, Nexum Management, LLC, which is the general partner of Flintrock Feeders, LP , had lapsed due to forfeiture and was forfeited during all times pertinent to this suit. Nexum Management LLC, the general partner of Flintrock Feeders, LP, was forfeited on February 6, 2008, and not reinstated until February 4, 2009, after suit was filed. Texas law calls for personal liability for actions undertaken after a corporate forfeiture or dissolution and this is not limited by the reinstatement of a corporate entity. Also as discussed in Plaintiffs opposition to Defendants' motion for summary judgment this rule extends to limited liability companies. Plaintiffs assert Mr. Bostic is personally liable for any damages incurred by the Thompsons in this lawsuit.

As to the Defendants counterclaims, they claim incredibly high amounts owed for feed for cattle under the Retained Equity Contracts. However, the Retained Equity Contracts are not precisely clear as to the losses which the seller to the contract is to bear. Also the inflated the cost of feeding is solely the fault of Defendants. Defendants' financial problems led to the closing of the feed yard and the moving of the cattle into another company's care creating another layer to the costs of feeding. The cattle's poor performance was due to the fault of Defendants and this poor performance resulted in lower amounts received for the cattle which in turn gave less of an offset against the feeding costs.

## 2. Summary of Claims and Defenses of Defendants and Counter-Plaintiffs

Flintrock owned and operated a feedyard during the fall of 2008 and into the spring of 2009. Flintrock took in cattle from the Thompsons for care and feeding throughout the fall of 2008. In March 2009, Flintrock leased the feedyard to Hansford County Feeders. The Thompson cattle were eventually finished to fat cattle and sold for slaughter with sale dates during various months of 2009 with the last of the cattle sold in November, 2009.

As part of the operations of the feedyard, Flintrock would finance the Thompson cattle. Upon delivery of cattle to the feedyard, the Thompsons would submit an invoice to Flintrock representing the price they paid for the cattle. Flintrock would then finance 75 percent of the invoice price of the cattle and remit funds to the Thompsons for 75 percent of the amount shown on the invoice. The financing agreement was memorialized in Retained Equity Contracts. The terms and conditions of the Retained Equity Contracts applied to all the Thompson cattle at the feedyard. Pursuant to the contract, upon the final sale of the cattle subject to the contract, the proceeds from the sale of the cattle would be applied to the outstanding feed bills and charges associated with the feed

and care of the cattle and to payback the 75 percent loan made to the Thompsons, plus interest. If after the application of the proceeds to the outstanding balance owed Flintrock there was additional proceeds available, those proceeds would be remitted to the Thompsons. However, if after the application of the proceeds to the outstanding balance owed Flintrock there was still an amount due Flintrock, then the Thompsons were obligated to pay Flintrock those amounts.

When all the cattle were finally finished and sold in November 2009, there remained a balance due and owing to Flintrock in the amount of approximately $592,000.00. This amount is the substance of Flintrock's counterclaim against the Thompsons. Flintrock additionally seeks its attorney's fees.

Flintrock denies that it committed securities fraud as alleged by the Thompsons. Preliminarily, Flintrock states that the transactions between it and Plaintiffs were not "securities." Therefore, there can be no violation of securities laws or The Investment Advisor Act.

As part of the services Flintrock provided to customers who feed cattle at their feedyard, Flintrock would allow its customers to place cattle positions in Flintrock's commodities account. If the customer elected to utilize the account, Flintrock would set up a sub-account for the customer. In addition, Flintrock would advance the initial margin requirement necessary to open the sub-account. The decision on whether to place cattle contracts in the account was solely the decision of the Thompsons. Likewise, the decision on what and how many contracts to place in the account were solely the decision of the Thompsons. There were no misrepresentations made to the Thompsons regarding the account. Importantly, the acts complained of by the Thompsons do not constitute securities.

Flintrock denies that it is liable for any market losses incurred by the Thompsons when their commodity sub-account was involuntarily liquidated on November 5, 2008 because the Thompsons' position on that date was a continuation of a prior pattern of speculation (as opposed to actual hedging) in the account and a determination of whether such position would, in the future, prove to be profits or losses is, in itself, purely speculative.

Flintrock denies that it breached any duty as an investment advisor. Flintrock was not an investment advisor. Flintrock merely allowed its customers to place cattle contracts in its commodities account. Flintrock never recommended to the Thompsons an investment plan of action.

Flintrock denies that it breached the retained equity contracts with the Thompsons. In fact, it is the Thompsons who breached the contracts by failing to pay Flintrock the monies due and owing to Flintrock under the contracts. The mere fact that the commodities account was liquidated does not constitute a breach of the contracts as alleged by the Thompsons.

Flintrock denies that it was negligent in the care and feeding of the Thompson cattle. The quality of the cattle received from the Thompson combined with the weather conditions during the fall of 2008 contributed to the death loss complained of by the Thompsons. There was no breach of the standard of care. In addition, the Thompsons agreed not to hold Flintrock responsible for any death losses.

Defendant Bostic denies that he is personally liable for any claims herein because, as a matter of law, the personal liability provisions of the Texas Tax Code to not apply to the facts of this case as set forth in Bostic's prior Motion for Summary Judgment.

## C.

### STIPULATIONS

The parties have stipulated to the following facts:

1. The terms and conditions of the Retained Equity Contracts control the relationship between Flintrock and the Thompsons.

2. Flintrock owned and operated the feedyard until March 2009.

3. Nexum Management, LLC is the general partner of Flintrock Feeders, Ltd.

4. Lindy "Bud" Bostic is the sole shareholder of Nexum Management, LLC.

5. Gary Thompson, Jacob Thompson and Benson Thompson do business as "Gary Thompson and Sons." Gary Thompson & Sons operates as, among other things, a "dealer," as defined under the United States Packers & Stockyards Act.

6. The parties may prove reasonable and necessary attorney's fees by submitting the same to the Court by affidavit within 7 days of the close of evidence in the case. The opposing party may object to the statements made in the affidavit or as to whether or not attorney's fees are reasonable and recoverable within 7 days of the submission of the other party's fees affidavit.

## D.

### CONTESTED QUESTIONS OF FACT

1. **Contested Questions of Fact, Including Special Damages, of Plaintiffs and Counter-Defendants**

    a. The amount of liquid funds in the commodities account due the Thompsons when the Nexum Management, LLC, commodity account was liquidated.

    b. The amount of credit to which Plaintiff's are entitled for "margin money" for which Plaintiff's were charged on the relevant feed bills by Defendants for the hedge contracts.

    c. The amount of attorneys fees recoverable by Plaintiffs' for prevailing on their claims.

    d. The amount of damages due to Plaintiffs' from Defendants' for negligent care of the cattle subject to the retained equity contracts.

    e. The amount of any claim offsets owed the Defendants'.

    g. Whether the Defendants provided advice to the Plaintiffs regarding the holding or liquidating of hedge contracts.

    h. All contested questions of fact listed by the Defendants.

    i. All facts that may be shown at trial but not stipulated by the parties.

2. **Contested Questions of Fact, Including Special Damages and Offsets to Plaintiffs' Special Damages, of Defendants and Counter-Plaintiffs**

   a. The amount due and owing to Flintrock for feed expense and related charges as well as the outstanding balance due on the loans made to the Thompsons.

   b. The amount of attorneys' fees recoverable by Flintrock for prevailing on its counterclaims.

   c. Whether Flintrock made material misrepresentations to the Thompsons relating to the commodities account.

   d. Whether Flintrock acted to deceive or defraud the Thompsons in connection with the commodities account.

   e. If Flintrock did make material misrepresentations to the Thompsons relating to the commodities account, whether the Thompsons knew, or should have known that such representations were false.

   f. If Flintrock did make material misrepresentations to the Thompsons relating to the commodities account, whether the Thompsons relied on such representations to their detriment.

   g. Whether Nexum Management, LLC or Bud Bostic participated in the alleged misrepresentations relating to the commodities account.

   h. The amount, if any, of damages associated with the alleged misrepresentations relating to the commodities account.

   i. Whether Flintrock directed trading decisions made by the Thompsons.

   j. Whether the decisions made by the Thompsons with respect to trading were made on their own, knowingly and with full knowledge of relevant facts.

   k. Whether Flintrock was an investment advisor.

   l. If Flintrock was an investment advisor, whether it breached a duty owed to the Thompsons.

   m. Whether Flintrock breached the retained equity contracts with the Thompsons.

   n. Whether Flintrock breached the standard of care in the cattle industry for the feeding and care of cattle located at a feedyard.

   o. Whether the death losses associated with the Thompson cattle were proximately caused by Flintrock.

   p. The amount, if any, of damages associated with the death losses.

   q. The actual cost of the Thompson cattle vis-à-vis the represented cost on the Gary Thompson & Sons invoices.

   r. The value of any Thompson cattle at date of death.

s. Whether Flintrock is entitled to an offset of any damages found against it in the amount of its counterclaim.

t. Whether the Thompsons were a joint enterprise and joint venture operated under the name Gary Thompson and Sons.

## E.

## CONTESTED QUESTIONS OF LAW

1. **Contested Questions of Law of Plaintiffs and Counter-Defendants:**

   a. How the Retained Equity Contracts apply to the facts and transactions in this lawsuit.

   b. Whether the Retained Equity Contracts were financing agreements, and the correct interpretation of application of the contracts.

   c. Whether Defendants breached the Retained Equity Contracts.

   d. Whether Defendants caused Plaintiffs to rely to their detriment upon Defendants.

   e. Whether Defendants had a duty of good faith and fair dealing to Plaintiffs.

   f. Whether Defendants fulfilled their duty of good faith and fair dealing to Plaintiffs.

   g. Whether Defendants fulfilled their duty of care toward the cattle in which Plaintiffs held an interest.

   h. Whether Defendants were negligent in their care of the cattle in which Plaintiffs' held an interest.

   i. Whether the transactions and relationship between Flintrock and the Thompsons constitute securities under the Securities and Exchange Act of 1934 or the Investment Advisors Act of 1940.

   j. Whether the Defendants had a duty to disclose the truth in connection with the transactions occurring between and the parties and through the Defendants.

   k. Whether Defendants acted as an "investment advisor" under federal securities law.

   l. Whether Defendants breached their duty as and investment advisor.

   m. What is the proper measure of damages for the determination of damages from breach of the "Retained Equity Contracts".

   n. What is the proper measure of damages for the determination of damages from Plaintiffs' detrimental reliance upon Defendants.

   o. What is the proper measure of damages for the determination of damages incurred as a result of negligent care of cattle.

   p. What is the proper measure of damages for the determination of damages incurred as a result of excess death loss of cattle.

   q. What is the proper measure of damages for the determination of damages associated with the liquidation of positions in the commodities trading account.

r.  What is the proper measure of damages for the determination of damages associated with the breach of duties under federal securities law toward Plaintiffs.

2. **Contested Questions of Law of Defendants and Counter-Plaintiffs:**

a.  Whether the transactions and relationship between Flintrock and the Thompsons constitute securities under the Securities and Exchange Act of 1934 or the Investment Advisors Act of 1940.

b.  Whether Flintrock committed securities fraud.

c.  Whether Flintrock was an "investment advisor" under federal securities laws.

d.  Whether Flintrock breached a duty as an investment advisor.

e.  Whether Flintrock breached the retained equity contracts.

f.  Whether Flintrock was negligent in the care of the Thompson cattle.

g.  What is the proper measure of damages, if any, for the determination of damages incurred as a result of excess death loss.

h.  What is the proper measure of damages, if any, for the determination of damages associated with the commodities trading account.

i.  Whether Lindy "Bud" Bostic is personally liable for any claim of Plaintiffs.

j.  Application of the terms of the Retained Equity Contract to the transactions and facts in this case.

### F.
### ESTIMATED TIME OF TRIAL

The parties estimate this trial will last approximately two days.

### G.
### ADDITIONAL MATTERS

None.

JOINT PRETRIAL ORDER
Joint Pretrial Order.doc

PAGE 8

SIGNED this _____ day of _____, 2009.

                                                       Honorable Mary Lou Robinson,
                                                       United States District Judge

*__AGREED:__*

Bradley L. Drell—LA Bar Roll No. 24387
Amanda W. Barnett—LA Bar Roll No. 19225
Gold, Weems, Bruser, Sues & Rundell
2001 MacArthur Drive
Alexandria, Louisiana 71307
(318) 445-6471; Fax (318) 445-6476


/s/ Bradley L. Drell

*__Attorneys for Plaintiffs and Counter-Defendants__*



John Huffaker - TBN 10187600
John Massouh - TBN 24026866
Sprouse Shrader Smith P.C.
Post Office Box 15008
Amarillo, Texas 79105-5008
(806) 468-33961; Fax (806) 373-3454


/s/John Huffaker

*__Attorneys for Defendants and Counter-Plaintiffs__*